UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CORAN NETTLES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-CV-00203-JAR |
| | ) | |
| BILL STANGE, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Petitioner Coran Nettles' Petition Under 28 U.S.C. §
2254 for a Writ of Habeas Corpus by a Person in State Custody. (Doc. 1). Respondent has
responded (Doc. 18), and Petitioner has replied. (Doc. 19). For the reasons discussed below, the
Petition will be denied.


I.      BACKGROUND

The State of Missouri accused Petitioner, Bryan Shelton ("Shelton"), and Kendall White
("White") of acting together to kill Andre Hathaway ("Victim"). Shelton pled guilty on various
counts and proceeded to testify against Petitioner at trial in Missouri state court. The prosecution
claimed that on June 7, 2011, Nettles and Shelton invited Victim to come to their house and sell
heroin. An argument ensued, and either Nettles or Shelton hit Victim with a bedpost and dropped
a ten-pound barbell on his head. The body was disposed of, along with a section of blood-stained
carpet. Victim's body was discovered in a creek the next day. Evidence led the police to Nettles,
Shelton, and White. *See generally State v. Nettles*, 481 S.W.3d 62, 64-65 (Mo. Ct. App. 2015).

On March 14, 2014, a St. Louis jury convicted Petitioner of first-degree murder, first-
degree robbery, and two counts of armed criminal action in connection with Victim's death.

1

Petitioner was sentenced to life without parole on the first-degree murder charge and concurrent terms of life for each of the other counts. (Doc. 1 at 2). On December 1, 2015, the Missouri Court of Appeals affirmed the trial court's conviction. Petitioner then sought post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. The motion court held an evidentiary hearing and denied the motion for post-conviction relief on April 17, 2018. (*Id.* at 3). The Missouri Court of Appeals affirmed the motion court's decision on September 10, 2019. (Doc. 18-12). *See also Nettles v. State*, 582 S.W.3d 927 (Mo. Ct. App. 2019) (per curiam). On February 5, 2020, Petitioner timely filed his Petition for Writ of Habeas Corpus in this Court. (Doc. 1). This Court has liberally construed the pro se Petition. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Petition states six grounds for relief:

> Ground One: Ineffective Assistance of Counsel – Motion to Suppress
>
> Ground Two: Due Process – Successive Conflict
>
> Ground Three: Ineffective Assistance of Counsel – Successive Conflict
>
> Ground Four: Ineffective Assistance of Counsel – Exhibit 61 Admission
>
> Ground Five: Due Process & Confrontation Clause – Shelton's Prior Bad Acts
>
> Ground Six: Ineffective Assistance of Counsel – Same Prosecutor

## II.   LEGAL STANDARDS

### A.   28 U.S.C. § 2254

A district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may not grant a writ of habeas corpus as to any claim that was adjudicated on the merits in state court proceedings unless such adjudication "(1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (alteration in original) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Finally, a state court decision is based on an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1111 (8th Cir. 2004) (citations omitted). The petitioner must rebut this presumption by clear and convincing evidence. *Rice v. Collins*, 546 U.S. 333, 338-39 (2006).

B.  Ineffective Assistance of Counsel

Petitioner's first, third, fourth, and sixth grounds for relief all allege ineffective assistance of trial counsel Robert Taaffe ("Trial Counsel"). Federal review of an ineffective assistance of counsel claim under § 2254 is "doubly deferential." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). First, Petitioner must meet the requirements of *Strickland v. Washington* by establishing that (1) trial

3

counsel's performance was objectively unreasonable and (2) Petitioner was prejudiced such that the result of the proceedings would have been different if not for the error. 466 U.S. 668, 694 (1984). Judicial scrutiny of counsel's performance is "highly deferential," and this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, Petitioner must demonstrate that the state court's adjudication of his ineffective assistance claim was unreasonable. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, [Petitioner] must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Underdahl v. Carlson*, 381 F.3d 740, 742 (8th Cir. 2004) (quoting *Bell v. Cone*, 535 U.S. 698-99 (2002)).

## III.   DISCUSSION

### A.   Procedural Default

Respondent contends that Petitioner has procedurally defaulted his fifth and sixth grounds for relief because the claims were not presented at each step of the post-conviction proceedings. (Doc. 18 at 7-8). Petitioner previously filed a Motion for Stay and Abeyance acknowledging that these two grounds are unexhausted but requesting a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005). (Doc. 8).[1] This Court denied the motion, concluding that good cause did not exist and the claims are not potentially meritorious. (Doc. 21). Petitioner proceeded to file a Motion to Redact Motion for Stay and Abeyance requesting that this Court permit Petitioner to raise the unexhausted grounds under the procedural default exception identified by

---

[1] Petitioner raised Ground Five in his direct appeal. The Missouri Court of Appeals concluded, however, that Petitioner did not preserve this ground for appeal because he did not make an offer of proof on the issue at trial. The court declined to perform even a plain error review. (Doc. 18-6 at 13-16). Regardless, plain error review by the state court of appeals does not cure a procedural default. *Clark v. Bertsch*, 780 F.3d 873 (8th Cir. 2015).

the Supreme Court in *Martinez v. Ryan*, 566 U.S. 1 (2012)

A habeas petitioner under § 2254 may avoid procedural default only by showing that there was cause for the default and resulting prejudice, or that a miscarriage of justice will result from enforcing the procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). To establish cause, the petitioner must show that "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court established the general rule that counsel's errors in post-conviction proceedings do not qualify as cause for default. The Supreme Court recognized a narrow exception to this rule in *Martinez*, holding: "Where, under state law, a claim of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review proceeding, there was no counsel or that counsel was ineffective." *Martinez*, 566 U.S. at 17. The Supreme Court noted that the underlying ineffective assistance of trial counsel claim must be "a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

In his Motion to Redact Motion for Stay and Abeyance, Petitioner merely asserts that good cause exists because the grounds were not known to him until after his post-conviction proceedings were final and post-conviction counsel rendered ineffective assistance by failing to raise these claims. (Doc. 22 at 1-2). As discussed below and explained in this Court's decision denying Petitioner's Motion for Stay and Abeyance (Doc. 21), this Court finds that Grounds Five and Six do not raise substantial claims of ineffective assistance of trial counsel. Ground Five does not raise ineffective of trial counsel whatsoever, rendering *Martinez* completely inapplicable. It was not objectively unreasonable, moreover, for appellate counsel to decline to

5

raise these grounds on appeal. *See Oxford v. Delo*, 59 F.3d 741, 746 (8th Cir. 1995) (holding appellate counsel need not raise every non-frivolous ground on appeal). Therefore, this Court finds that Grounds Five and Six are procedurally defaulted and the *Martinez* exception does not apply, but will also proceed in the alternative to substantially address these grounds for relief.

B.   Substantive Analysis

**Ground One: Ineffective Assistance of Counsel – Motion to Suppress**

In his first ground for relief, Petitioner contends that Trial Counsel rendered ineffective assistance by failing to file a motion to suppress evidence allegedly obtained in violation of Petitioner's Fourth Amendment rights. Detective Jerone Jackson testified that the day after Victim's body was discovered, he arrived at 5654 Hiller Place ("5654 Hiller") and made contact with Alfred Kemper ("Kemper"). (Doc. 18-1 at 643). According to Detective Jackson, Kemper proceeded to sign a document consenting to the search of 5654 Hiller. (*Id.* at 643-44). The officers entered the house and found incriminating evidence in Petitioner's room, including a wallet later identified as belonging to Victim. (*Id.* at 649-50). Petitioner argues that this evidence should have been suppressed because Kemper never gave consent to search 5654 Hiller and did not have authority to consent to the search of Petitioner's bedroom because he did not live at the house.

The Missouri Court of Appeals considered this argument and determined that Petitioner "presented insufficient evidence at the post-conviction evidentiary hearing to prove [Trial] Counsel was ineffective for failing to file a motion to suppress evidence." (Doc. 18-12 at 5). The court specifically noted that Petitioner failed to present testimony from Kemper while the prosecution had introduced the signed consent form as evidence at trial. (*Id.*). At the evidentiary

hearing on the direct appeal, Trial Counsel extensively testified regarding his decision not to file

a motion to suppress:

> Trial Counsel: So the police came, I believe the next day, roughly – and Mr.
> Kemper did live at the residence. And, so, when the police came, they – they
> asked him permission to search the residence and I think they obtained a written
> consent to search the residence from Mr. Kemper. He testified differently on the
> stand, which was interesting about that permission, but when I looked at it
> initially, my thought was apparent authority. The bedroom that [Petitioner] was –
> was living in was an enclosed porch that had been converted into a bedroom and
> [Petitioner] wasn't – I don't think at the time was a primary resident, but a
> residence he slept at from time to time, but it was a bedroom. So there was a
> wallet that was found between the mattress of that – of that bed and that wallet,
> when the police seized it, that wallet contained DNA from [Petitioner]. So in
> retrospect, if I filed a motion to suppress, potentially there would, at least, be a
> shot at getting that wallet excluded, potentially, although I'm not sure – I'm still
> not sure today whether or not the doctrine of apparent authority, whether it would
> have been suppressed or not, but, at least, there would have been a shot to try to
> get the wallet suppressed on the idea that the person who gave them permission
> did not give specific permission to search [Petitioner's], quote-unquote, bedroom.
>
> …
>
> Post-Conviction Relief Counsel: Okay. And, so, just finally, did you ever think
> during the process of the trial to make an oral motion to suppress once you heard
> Mr. Kemper's testimony [that he did not live in the house or consent to the
> search]?
>
> Trial Counsel: No.
>
> Post-Conviction Relief Counsel: And why not?
>
> Trial Counsel: Again, the apparent authority doctrine.
>
> Post-Conviction Relief Counsel: Again, what is the apparent authority doctrine?
>
> Trial Counsel: Well, the apparent authority doctrine means the police go through
> a residence and if somebody answers the door and from – from there – from the
> appearances that they live there and that's – and that's something reasonable
> under the circumstances, that, you know, that, and according to the police,
> according to what they said, you know, that they answered the door, Mr. Kemper,
> whatever, he answered the door, Mr. Kemper was the one who – who said he
> lived there. And, then, so he's an adult, not a child, and then he provided them
> consent to search. So, you know, given what the police laid out, which is not what
> Mr. Kemper testified to, but given what was in the police report, what the police
> laid out was something that – that would be what I would call it would have a

7

right to search the residence because Mr. Kemper represented that he lived there and he was an adult that lived there at the time, he had the apparent authority to give them permission to search the residence. (Doc. 18-7 at 11-16).

….

Trial Counsel: In my experience, most of the time the burden is on the State to prove that the search is legal by a preponderance of the evidence. That's their burden. And when it comes down to a credibility battle between the police and a lay witness, particularly when the police have a signed consent to search form, you almost never win that battle in a motion to suppress. I have – I don't think I have ever, ever won a motion to suppress on statements in the number of years that I've practiced wherein the police obtained a written consent to search form and the witnesses come in and say, well, I hadn't given consent or whatever, I don't think I ever won that credibility battle in front of the Court, given the fact that the burden is so low on the State by a preponderance of the evidence to show that the search was legal. (*Id.* at 36).[2]

As discussed above, this Court's review of Petitioner's ineffective assistance claim is doubly deferential. First, this Court agrees with the Missouri Court of Appeals that Trial Counsel's performance was not objectively unreasonable. The evidentiary hearing reflects that Trial Counsel considered filing a motion to suppress but determined such a motion would have been unsuccessful because Kemper had apparent authority to consent to the search. This is not an objectively unreasonable interpretation of applicable precedent. *See United States v. Clutter*, 674 F.3d 980, 983 (8th Cir. 2012) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990)) ("Even when a third party lacks actual authority to consent to search or seizure of shared property or premises, the Fourth Amendment is not violated if the officers reasonably relied on the third party's apparent authority to consent, because the Amendment's reasonableness requirement

---

[2] Petitioner and Trial Counsel appear to believe that Kemper testified that he neither consented to the search nor lived at 5654 Hiller. The trial transcript, however, does not paint such a clear picture. When asked if he was staying at 5654 Hiller in June 2011, Kemper responded "[o]ff and on, I was staying there." (Doc. 18-1 at 351). In response to certain questions, Kemper impliedly affirmed he was living at the house. (*Id.* at 353).

As to the search, Kemper initially said his first conversation with police was at the station but later noted he "met with the police at [5654] Hiller" and spoke with them there. (*Id.* at 363). On further cross-examination, Kemper stated the police never asked him to consent to the search (*Id.* at 509). The consent form was admitted into evidence over an objection by Trial Counsel, who argued that Kemper said he never consented. (*Id.* at 643-44). The trial court determined that this argument went more to weight than admissibility. (*Id.* at 645).

demands of government agents 'not that they always be correct, but that they always be reasonable.'"). Trial Counsel also appropriately relied upon his experience failing to suppress evidence where the police had produced a signed consent to search form.

As to whether it was reasonable for the police to rely on Kemper's apparent authority, the Eighth Circuit has generally "been more liberal about allowing police to form their impressions from context." *United States v. Lindsey*, 702 F.3d 1092, 1096 (8th Cir. 2013) (citation omitted). Petitioner contends that Kemper could not possibly have had authority to consent to the search of his bedroom, but such contention is inconsistent with clear Eighth Circuit precedent. When a person with apparent authority has consented to the search, such consent is valid as to co-occupants "[s]o long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection." *United States v. Brewer*, 588 F.3d 1165, 1169 (8th Cir. 2009) (quoting *Georgia v. Randolph*, 547 U.S. 103, 121 (2006)); *see also United States v. Oates*, 173 F.3d 651, 657 (8th Cir. 1999). This Court cannot say that Trial Counsel's assessment of apparent authority doctrine, based on his experience, resulted in an objectively unreasonable decision. *See Sittner v. Bowersox*, 969 F.3d 846, 854 (8th Cir. 2020) ("Failure to raise a meritless objection cannot support a claim of ineffective assistance.").

Alternatively, this Court also finds that the Missouri Court of Appeals reasonably applied Supreme Court precedent. The court considered evidence presented at the evidentiary hearing and concluded that Petitioner had failed to establish objectively unreasonable performance by Trial Counsel. Petitioner has not identified an unreasonable determination of law or fact by the Missouri Court of Appeals in reaching this decision. Accordingly, Petitioner's first ground for relief will be denied because he has neither demonstrated ineffective assistance under *Strickland* nor established that the Missouri Court of Appeals unreasonably assessed this issue.

9

**Ground Two: Due Process – Successive Conflict**

**Ground Three: Ineffective Assistance of Counsel – Successive Conflict**

In his second and third grounds for relief, Petitioner contends that his Due Process and Sixth Amendment rights were violated because Trial Counsel previously represented state's witness Shelton in an unrelated matter. The parties agree that, a few years before Petitioner's trial, Trial Counsel briefly represented Shelton concerning an alleged assault with a baseball bat, though the case was dismissed at the Grand Jury. Before trial, the prosecution filed a motion in limine seeking to prohibit Trial Counsel from introducing testimony from Shelton relating to the baseball bat incident. Trial Counsel explained to the judge at such time:

> I checked [Shelton] and, as it turns out, I did represent him on a probation violation back in 2010. And we did represent him on this assault first, armed criminal action that he was charged with that was ultimately dismissed because – because of the – I guess the person that was – the alleged victim never showed up and testified in the grand jury. So I'm going to have this information. I don't intend on using it, unless Mr. Shelton says something that would open the door to it. (Doc. 18-6 at 3).

The trial court proceeded to sustain the prosecution's motion in limine and instructed Trial Counsel to approach the bench before inquiring regarding Shelton's alleged assault. (*Id.*).

At Petitioner's trial, Shelton testified regarding his reaction when the Victim was being beaten to death: "I was kind of stunned, so I was looking for a while, I was just standing there. Standing like in shock at what just happened." (Doc. 18-1 at 752). On cross-examination, Trial Counsel confirmed that Shelton was "in shock" and asked whether Shelton had ever "seen or experienced anything like this before." (*Id.* at 816). The prosecution promptly requested to approach the bench and contended that Trial Counsel was "trying to open the door to something he knows we had an entire motion in limine about involving his representation of this particular defendant" and "now [Trial Counsel] wants to go into something he has privileged or confidential information about." (*Id.* at 817). After some back and forth, the court sustained the

prosecution's objection, noting that Shelton "could explain he was in shock here at this time because he knew [Victim], he was  - and so that would put you in more shock." (*Id.* at 819). The trial court suggested that circumstances may be different if the defense had evidence that Shelton previously saw someone "hit upside the head with a bedpost and a weight dropped." (*Id.* at 818). It appears the court concluded that the alleged baseball bat assault was not relevant, as Shelton could very well have been shocked by the bludgeoning of the Victim, who was a friend, even if Shelton had previously witnessed or performed violent acts.

Counsel renders ineffective assistance when an actual conflict adversely affects his or her performance. *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Clear precedent establishes that the "mere fact that a trial lawyer had previously represented a prosecution witness does not entitle a defendant to relief." *United States v. Flynn*, 87 F.3d 996, 1001 (8th Cir. 1996) (citation omitted). Instead, the defendant must establish that the successive representation "had some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one." *Id.* In *United States v. Shepard*, the Eighth Circuit identified two potential adverse effects in the successive conflict context: "(1) the attorney's pecuniary interest in furthering his business relationship with the former client may affect representation of the present client, and (2) the attorney may misuse confidential information obtained from the former client, *or may fail to fully cross-examine for fear of misusing confidential information*." 675 F.2d 977, 979 (8th Cir. 1982) (emphasis added). Petitioner alleges that Trial Counsel failed to vigorously cross-examine Shelton concerning his prior assault because he risked relying on confidential information obtained through his prior representation. The facts before this Court and the Missouri Court of Appeals, however, belie this claim.

Trial Counsel briefly represented the prosecution's witness, Shelton, when he was a criminal defendant in an unrelated assault case. The representation was extremely limited in

11

scope. At the post-conviction evidentiary hearing, Trial Counsel explained that "the only thing we had done for Mr. Shelton was we had entered our appearance. I think we may have done one bond reduction for him. The case never made it to Grand Jury. It was dismissed. So I never received a police report. I don't have any indication that I ever talked to Mr. Shelton about what happened." (Doc. 18-7 at 19). Instead, the information Trial Counsel had came almost exclusively from Petitioner, who was personally familiar with the baseball bat incident. (*Id.*). Accordingly, Trial Counsel had no fear of misusing relevant confidential information obtained from the prior representation because he had no such information.

Regardless, the record reflects that Trial Counsel attempted to address the baseball bat assault when arguing that Shelton opened the door by claiming he was shocked. Admittedly, the prosecution sought to bar evidence regarding the assault in part based on the successive conflict. But the trial judge's statements clearly demonstrate that the evidence was barred for relevance, since Shelton could very well have been shocked even if he had previously assaulted someone. (Doc. 18-1 at 819). The Missouri Court of Appeals reached the same conclusion, finding that "the record makes clear the objection to [Trial Counsel's] cross-examination of Shelton was for relevance, and the trial court sustained the objection on relevance." (Doc. 18-12 at 7). In short, Trial Counsel's prior representation of Shelton is not what prevented the assault evidence from being admitted. The Missouri Court of Appeals reasonably found that Petitioner "failed to meet his burden of proving [Trial Counsel's] actions were detrimental," especially since Trial Counsel "cross-examined Shelton thoroughly." (*Id.* at 8). This Court also agrees with the Missouri Court of Appeals that since no actual conflict existed, the trial court did not violate Petitioner's Due Process or other constitutional rights by allegedly failing to adequately inquire into the extent of

the conflict. (*Id.* at 8-9).[3] While Trial Counsel certainly could have handled his potential conflict in a more thorough and transparent manner, there is simply no evidence that the prior representation of Shelton adversely affected Petitioner.

### Ground Four: Ineffective Assistance of Counsel – Exhibit 61 Admission

In his fourth ground for relief, Petitioner contends that Trial Counsel rendered ineffective assistance by failing to move for the suppression of Exhibit 61, a cigarette butt found in the ashtray of Victim's truck and determined to have DNA consistent with Petitioner's DNA. Petitioner claims this evidence should have been suppressed because the prosecution failed to lay the proper foundation and demonstrate clear chain of custody. Respondent essentially argues that Petitioner's claims are purely speculative.

At trial, Exhibit 61 was admitted without objection in advance of testimony by Dr. Karen Prieter, the prosecution's DNA expert. (Doc. 18-1 at 590-91). Dr. Prieter proceeded to testify that Petitioner was "the source of the DNA detected [on the cigarette butt] to a reasonable degree of scientific certainty." (*Id.* at 602). Following this statement, Detective Jackson testified that a cigarette butt was recovered from Victim's car. (*Id.* at 658). Trial Counsel inquired about the evidence, specifically asking why a picture of the cigarette butt was not taken. Detective Jackson responded that he is "not responsible for photographing" and "[w]hoever seized the cigarette butt would be able to answer that question." (*Id.* at 698). In closing arguments, Trial Counsel argued that Petitioner had a prior relationship with Victim, explaining the cigarette's presence, and further claimed it is a "mystery cigarette" because "[t]here's no picture of the cigarette." (*Id.* at 1010). At the post-conviction evidentiary hearing, Trial Counsel had limited recollection of the

---

[3] The trial court may have had a duty to inquire into the conflict pursuant to *Cuyler v. Sullivan*, 446 U.S. 335 (1980). The Supreme Court has clarified, however, that in order for a defendant to demonstrate constitutional violation due to a trial court's failure to adequately inquire into a conflict, the defendant must establish that the conflict adversely affected counsel's performance. *See Mickens v. Taylor*, 535 U.S. 162 (2002).

cigarette butt's admission, but testified he did not object because he "thought the chain of custody would have been sufficient, or, simply, I missed it, one of the two." (Doc. 18-7 at 43). Trial Counsel noted that the "standards for chain of custody have been loosened" and the prosecution is not required to present every person in the chain. (*Id.*).

Petitioner's fourth ground for relief fails because he cannot establish prejudice as required under *Strickland*. To succeed on his ineffective assistance claim, Petitioner must "show that there is a reasonable probability that but for the complained-of-conduct the result would have been different." *Davis v. United States*, 673 F.3d 849, 853 (8th Cir. 2012) (citation omitted). A reasonable probability is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Generally, if a court can dispose of an ineffective assistance claim due to lack of prejudice, it need not reach the issue of whether counsel's actions were objectively unreasonable. *See Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1104 (8th Cir. 2011).

First, Petitioner has offered no evidence indicating the prosecution would have been unable to establish the requisite foundation to introduce Exhibit 61. Petitioner's claim is purely speculative, and therefore there is not a reasonable probability that Trial Counsel's filing of a motion to suppress would have changed the outcome. Second, as discussed by the Missouri Court of Appeals, "there was overwhelming evidence presented at trial connecting [Petitioner] with the [V]ictim's truck and murder." (Doc. 18-12 at 6). Trial Counsel discussed alternative explanations for the cigarette butt's presence. (Doc. 18-1 at 1010). Meanwhile, other evidence connected Petitioner to Victim's truck, DNA evidence connected Petitioner to Victim's wallet, and an eyewitness testified that he watched Petitioner kill Victim. Two witnesses testified that they saw Petitioner enter the truck.[4] Petitioner has not persuaded this Court that he would have

---

[4] Petitioner claims that Trial Counsel should have objected to testimony by these two witnesses indicating that Petitioner entered Victim's truck. (Doc. 19 at 18). Witness Tyrone Cunningham testified that he saw Petitioner enter the driver's side of Victim's car. (Doc. 18-1 at 379-80). Witness Mandani Thompson corroborated this testimony.

been found innocent but for introduction of Exhibit 61. Finally, pursuant to the doubly deferential standard of review applicable to § 2254 claims of ineffective assistance, this Court finds that the Missouri Court of Appeals reasonably assessed the facts and determined that Petitioner failed to demonstrate prejudice. The Missouri Court of Appeals discussed relevant evidence and concluded that Petitioner "failed to prove by a preponderance of the evidence that there is a reasonable probability that the outcome of the proceeding would have been different had [Trial] Counsel objected to State's Exhibit 61." (Doc. 18-12 at 6). Accordingly, Petitioner's fourth ground for relief will be denied.

### Ground Five: Due Process & Confrontation Clause – Shelton's Prior Bad Acts

In his fifth ground for relief, Petitioner contends that his Due Process rights were violated by the trial court's refusal to admit evidence of Shelton's prior bad acts (*i.e.*, the baseball bat assault). 28 U.S.C. § 2254 only permits this Court to correct violations of (1) the United States Constitution; (2) federal laws; or (3) treaties of the United States. As to Petitioner's Due Process claim, state law evidentiary issues only assume constitutional significance where the introduction or exclusion of evidence is so unfair that it violates "fundamental conceptions of justice." *See Dowling v. United States*, 493 U.S. 342 (1990). The Eighth Circuit has clarified that, to constitute a Due Process violation, an evidentiary mistake must be "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). Petitioner also alleges that the state court's refusal to admit evidence of Shelton's prior bad acts violated Petitioner's rights under the Confrontation Clause. This claim has been procedurally defaulted, but this Court will address it substantively.

---

(*Id.* at 411). This testimony was clearly relevant, and Petitioner offers no legitimate basis upon which Trial Counsel should have objected.

As discussed above, Shelton testified that he was "in shock" when he witnessed Victim's death, and Trial Counsel argued that this statement opened the door to introduction of the alleged baseball bat assault. Under Missouri law, the trial court has broad discretion to admit or deny evidence. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006). Generally, evidence of a witness' prior bad acts is only admissible if it goes to the witness' truth or veracity or the witness opens the door to the evidence, among other exceptions not relevant here. *See State v. Clay*, 975 S.W.2d 121, 141 (Mo. banc 1998); *State v. Forster*, 854 S.W.2d 1, 4 (Mo. Ct. App. 1993) (evidence of witness' prior bad acts inadmissible for impeachment because not related to truth or veracity of witness). The trial court reasonably concluded that Shelton's alleged prior bad act, the baseball bat assault, was inadmissible because it did not speak to the truth or veracity of his statement that he was in shock, nor did the statement open the door. The court noted that Shelton "could explain he was in shock here at this time because he knew [Victim], he was  - and so that would put you in more shock." (Doc. 18-1 at 819). Even if this Court disagreed with the trial court's evidentiary ruling, Petitioner has not established that the exclusion "rendered his entire trial fundamentally unfair." *Anderson*, 44 F.3d at 679.

Petitioner also claims that the trial court's decision violated his rights under the Confrontation Clause of the Sixth Amendment, which provides that the "accused shall enjoy the right . . . to be confronted with the witnesses against him." The Confrontation Clause is "generally satisfied when the defense is given a full and fair opportunity to probe and expose . . . infirmities through cross-examination." *United States v. Sigillito*, 759 F.3d 913, 937-38 (8th Cir. 2014) (citation omitted). In *Briscoe v. Norman*, the court upheld a state court's determination that the trial court did not violate the Confrontation Clause "when excluding offers of impeachment on immaterial or collateral matters" during cross-examination of a witness. No. 4:11-CV-1154 JCH, 2014 WL 4204903, at *3 (E.D. Mo. Aug. 22, 2014). Petitioner's trial

counsel extensively cross-examined Shelton. The exclusion of this single prior bad act, which was a collateral matter potentially relevant for impeachment purposes only, does not amount to a violation of the Confrontation Clause in these circumstances because Petitioner had a full and fair opportunity to cross-examine Shelton. *See United States v. Kenyon*, 481 F.3d 1054, 1063-64 (8th Cir. 2007) (internal quotation omitted) ("The Confrontation Clause similarly contemplates that evidence [impeaching an accuser] may be excluded if the evidence has minimal probative value.").

Even if the evidence should have been admitted and Petitioner lost his right to confront Shelton, any such error was harmless because Shelton's credibility had already been substantially impeached. This harmless error inquiry depends on the importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of corroborating or contradicting testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). The excluded testimony here concerns a completely unrelated assault. Shelton admitted that he previously used heroin, lied to the police about having planned the robbery and various other elements of the crime, and helped move Victim's body. (Doc. 18-1 at 779, 794, 801-04). Trial Counsel further established bias by implying that Shelton was testifying in exchange for a lighter sentence. (*Id.* at 809-11). In these circumstances, any error would have been harmless because Shelton's credibility had been substantially impeached and Petitioner sought to introduce minimally relevant evidence. *See United States v. Santisteban*, 501 F.3d 873, 879-80 (8th Cir. 2007) (Finding any Confrontation Clause violation harmless where "jury surely understood that [witness] hoped to benefit from incriminating [the defendant].").

17

**Ground Six: Ineffective Assistance of Counsel – Same Prosecutor**

In his sixth and final ground for relief, Petitioner contends that Trial Counsel rendered ineffective assistance by failing to elicit evidence that the same prosecutor was assigned to both his and Shelton's cases. As discussed above, this claim has been procedurally defaulted. In ruling on Petitioner's Motion for Stay and Abeyance, moreover, this Court explained why the sixth ground for relief fails as a matter of law. (Doc. 21 at 4). The prosecutor's dual role is only potentially relevant because it suggests that Shelton testified in exchange for a lesser sentence. But Trial Counsel extensively questioned Shelton about his seeking a more lenient sentence in exchange for his testimony. (Doc. 18-1 at 809-11). In the following exchange on cross-examination by co-defendant's counsel, moreover, Shelton admitted that he testified for this reason:

> Q: And your testimony is here because you were hoping for some favor from the sentencing judge, isn't that right?
>
> A: I hope I could just get – yeah.
>
> Q: Right. So that's why you're testifying, because you're hoping that the sentencing judge has some favor on your sentence, right?
>
> A: Yes, sir. (*Id.* at 840).

Petitioner devotes substantial effort in his sixth ground for relief discussing Shelton's incentive to lie and the likelihood that he received a lesser sentence in exchange for his testimony. But these facts were completely apparent to the jury, who was responsible for assessing Shelton's credibility. Introduction of evidence regarding the prosecutor would not have made any material difference on this issue. As a result, Petitioner cannot establish prejudice under *Strickland* for his trial counsel's failure to elicit testimony that the same prosecutor was working on Shelton's case because there is no "reasonable probability that but for the

complained-of-conduct the result would have been different." *Davis v. United States*, 673 F.3d 849, 853 (8th Cir. 2012) (citation omitted).

## IV.    CONCLUSION

Petitioner seeks habeas relief from this Court after being convicted of first degree murder by a Missouri state court. Petitioner brings six grounds for relief, two of which have been procedurally defaulted because they were not fully exhausted. Grounds One, Three, Four and Six all allege ineffective assistance of Trial Counsel. As to each of these claims, Petitioner has not carried his heavy burden of demonstrating that Trial Counsel acted objectively unreasonably, Petitioner suffered prejudice as a result, and the Missouri Court of Appeals unreasonably applied federal law or relied upon an unreasonable determination of the facts in denying the claims. While the potential conflict created by Trial Counsel's prior representation of Shelton is of some legitimate concern, Petitioner failed to establish that the conflict in any way affected Trial Counsel's performance. Finally, Petitioner's Due Process and Confrontation Clause rights were not violated by the trial court's reasonable decision to exclude evidence of Shelton's alleged prior bad acts.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Coran Nettles' Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) is **DENIED** and this case is hereby **DISMISSED**. An Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, this Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998).

**IT IS FINALLY ORDERED** that Petitioner's Motion to Redact Motion for Stay and Abeyance (Doc. 22) is **DENIED** for the reasons stated in this Memorandum and Order.

Dated this 21st day of May, 2021.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE